## Case No. 5,078.

The FREDERICK M. WILSON.

The GENERAL SHERIDAN.

The YORK RIVER.

[7 Ben. 367.] [2]

District Court, E. D. New York. June, 1874.

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

[2] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Henry R. Wing, for libellants.
Beebe, Wilcox & Hobbs, for the Wilson.
Benedict, Taft & Benedict, for the Sheridan and York River.

BENEDICT, District Judge. This action is brought by the owners of an oil-scow to recover the damages caused by a collision which occurred in the East river on the 20th day of August, 1873. The oil-scow was one of a class of vessels used in transporting petroleum oil in bulk about the harbor of New York. She was sixty feet long, twenty-two feet wide, and contained 23,630 gallons of oil in bulk, equally distributed in twelve tanks. This scow was being towed from the North to the East river by the steamtug Frederick M. Wilson, upon two hawsers some ninety feet long, the tide being strong flood and the weather clear. There was, at the time, moored in the East river, a drilling machine, at work upon a reef there situated, and occupying, with its anchors, chains and buoys, a considerable space in the river. The locality of the machine is admitted to have been opposite New York pier No. 7, and 640 feet distant from the end of the pier. As the Wilson, with the oil-scow astern, passed around the Battery, she took a course between this drilling machine and the New York piers, and, when about opposite to it, encountered the tugs General Sheridan and York River coming down the East river with two light barges in tow—the General Sheridan towing ahead by two hawsers of from twenty to twenty-five fathoms in length, and the York River towing alongside and inside of the barges. In passing, the tows came in contact, the oil-scow striking the port barge of the down tow nearly head on, whereby the oil-scow was cut into some six feet, and her cargo lost.

To recover the damages thus sustained, the owners of the oil-scow now bring this action against the three tugs above mentioned.

In support of the charges of fault, which the libel and the several answers of the tugs contain, a mass of evidence has been presented. An attentive perusal of it in the light of the careful arguments of the respective advocates, has rendered it clear to me that the Wilson is responsible for the accident in question.

Her fault consisted in attempting to pass between the drilling machine and the New York piers, and by the approaching tow, without getting the scow she was towing in such a position as would enable her to keep the scow upon the right side of the passage between the drilling machine and the New York piers.

When she passed pier 2, her course led across the course which the down tow was then pursuing; and when she determined to pass the drilling machine upon the inside, it was clearly incumbent upon her to maintain a position in the flood tide which would enable her to drag the scow through the passage upon the east side of it. Nothing is disclosed by the evidence calculated to prevent her from so doing, and yet she allowed her scow to get in contact with a tow which was not to the east of the middle of the passage. It is indeed shown that she ported her helm before the vessels struck, but she ported too late, and was then unable to haul the scow clear of the course of the down tow.

This opinion in respect to the navigation of the Wilson in her passage inside the drilling machine renders it unnecessary to consider the further charge against her that she should have kept outside the drilling machine, and was in fault for taking a course inside the machine.

Charges of fault are also made against the tugs Sheridan and York River, the principal of which is that they made a sheer out from the piers, and thus prevented the Wilson from passing them in safety. This charge, it should be noticed, is not to be found in the libel, and it is not sustained by the proofs. On the contrary, it satisfactorily appears that the down tow was at no time outside of the middle of the passage, and was expecting and endeavoring to pass to the right of the Wilson and her scow, which course was in accordance with all the signals given by the tugs.

Another charge made against the Sheridan and the York River, earnestly insisted on by the libellants and somewhat less earnestly by the Wilson, is a failure to stop when the Wilson approached, so as to give her time to haul the scow past the bows of the down tow. It is conceded that the tugs did stop,

and that the Sheridan sheered sharply to port before the two barges came in contact; but it is insisted that this should have been done sooner. I am unable to see how fault in this respect can be imputed to the tugs of the down tow. All the vessels were in plain sight of each other; there was abundant room for the Wilson to pass with her scow outside of the down tow. The whistles blown by each tug indicated an intention and ability to pass to the right. The down tow was moving very slowly, and the tugs in charge of it had, as it seems to me, the right up to the last moment to rely upon the power and ability of the Wilson to keep the scow behind her, and thus to pass them to port, as her whistle indicated her intention to do.

One other point, and that made by the scow against all the tugs, remains to be noticed. It is that of navigating in violation of the statutes of the state of New York, which require all steamboats passing up and down the East river to be navigated as near as possible in the centre of the river.

That none of these tugs were navigating in the centre of the river is clearly shown, but their course in that respect, if in violation of the statute, was not the cause of this collision. They all saw each other in time to pass in safety where they were. There was abundant room for them to pass in safety, and the accident is in no way attributable to the fact that they were not in the centre of the river, but because of faulty navigation where they were. The violation of the statute referred to, if any such existed, was not the cause of the accident.

Inasmuch as no fault is charged upon the scow, the libellants are entitled, of course, to recover of some one or of all the tugs proceeded against; the conclusions above stated require a determination that she is entitled to recover of the Wilson alone.

A decree will accordingly be entered in favor of the libellants as against the Wilson, with an order of reference to ascertain the amount, and the libel as against the Sheridan and York River will be dismissed with costs.